(No. 5493.   December 13, 1930.)

PETER RIES, Respondent, v. PACIFIC FRUIT & PROD-
UCE  COMPANY,  a  Corporation,  Appellant.

[294 Pac. 336.]

Delana & Delana, for Appellant.

Freehafer & McClure, for Respondent.

BUDGE, J.—This action was brought by respondent against appellant upon three causes of action. The complaint alleges in the first cause of action that under a parol contract made in the fall of 1927 respondent sold and delivered to appellant five carloads of prunes, and that there is still due and owing to respondent under said contract a balance in the sum of $696.45. In the second cause of action respondent alleges that during the fall of 1927, under a written con-

tract, he sold and delivered to appellant one and one-half carloads of prunes; that while the written contract stipulated that he was to deliver four carloads, appellant agreed to accept a lesser number, or one and one-half carloads, and that there is a balance due and unpaid for said prunes amounting to $516.58, together with interest. Under the third cause of action respondent sought to recover $10 for the delivery of certain baskets from Emmett to Boise. During the course of the trial the third cause of action was eliminated, appellant allowing a credit for such amount.

Appellant answered each and all of the allegations of respondent's complaint and affirmatively alleged that it received and accepted the prunes as brokers, on consignment, and had paid to respondent all that was due him after deducting commissions and necessary charges; and further affirmatively alleged that its contracts for the handling of the prunes were in writing. Appellant further alleged that respondent agreed to furnish it on consignment as brokers four carloads of prunes which he failed and neglected to do, and furnished but one and one-half carloads, to its damage by loss of commissions in the sum of $219.50 on the two and one-half cars of prunes not furnished. Appellant further alleged it had overpaid respondent $29.40 on the amount that was due, which amount it claimed it was entitled to recover.

The cause was tried to the court and jury, resulting in a verdict in favor of respondent in the sum of $946.86. This appeal is prosecuted from the judgment entered on the verdict.

The principal question for determination is whether the delivery of the prunes by respondent to appellant was upon consignment only, or was an absolute sale.

On July 26, 1927, appellant's agent and respondent entered into a written contract or agreement dated at Emmett, Idaho, wherein, among other things, it is recited:

"That Pacific Fruit & Produce Company, a corporation, (herewith designated as the buyer) and Peter Ries (hereinafter designated as the seller) hereby agree as follows:

"The buyer agrees to buy and the seller agrees to sell the following at a price hereinafter stated and put up in accordance with the following specifications. All fruit accepted according to rules of State Horticultural Inspectors, with permission to ship within or without the State of Idaho, 5 cars ½ Bu. Baskets Italian Prunes U. S. No. 1s Sale subject confirmation from New York @ 1.00 per basket less brokerage of 15¢ per basket with a deposit of 100.00 per car. Price F. O. B. cars with a state certificate of inspection with car sale subject draft.

"Said produce to be delivered as follows: Early as possible.

"Payment to be made as follows: One Dollar ($1.00) receipt of which is hereby acknowledged and the balance upon delivery of goods contracted, the same to be properly packed and graded, free from hail, rain or other damage, and in accordance with the above contract. . . . . ''

It is respondent's contention that the foregoing agreement was an option to purchase, and not a consignment, as contended by appellant. The evidence is conflicting. The record shows, however, that within two days after the above agreement was entered into, appellant's agent again visited respondent, telling him that he had made a better contract, and the brokerage would be but ten cents per basket; that a sale of the prunes had been made in New York. Respondent was paid $100 on each car of prunes to be thereafter delivered. At that time, the option being exercised, an oral contract was entered into under the terms of which respondent was to receive in cash, f. o. b. cars, $1 per basket for his prunes, less ten cents per basket. We are constrained to hold that the evidence supports respondent's contention that the contract of July 26, 1927, was an option to purchase, and not a consignment, and that there is sufficient evidence in the record to support respondent's contention that an oral contract of sale superseded the option.

On August 12, 1927, appellant, through its agent, and respondent entered into a second contract, partly printed and partly written. The contract provides, among

other things, that appellant, designated as the buyer, and respondent, designated as the seller, agree as follows:

"The buyer agrees to buy and the seller agrees to sell the following at a price hereinafter stated and put up in accordance with the following specifications. All fruit accepted according to rules of State Horticultural Inspectors, with permission to ship within or without the State of Idaho, 4 cars Italian Prunes U. S. No. 1—packed Half Bushel Baskets with cars @ 1.00 per basket, less brokerage of 25.00 and brokerage 10¢ per basket per car. Prices F. O. B. cars. Grower to furnish a State Certificate of Inspection. Sale Draft attached Bill Lading.

"Said produce to be delivered as follows: Early as possible.

"Payment to be made as follows: $400.00 receipt of which is hereby acknowledged and the balance upon delivery of goods contracted. . . . . "

Upon this contract both appellant and respondent rely, but insist upon a different interpretation of its terms; appellant contending that it is a consignment contract, respondent's contention being that it was an absolute sale. From the record it appears that respondent furnished but one and one-half cars of prunes, which were all the prunes he had of his own, but he informed appellant's agent he would furnish the remaining cars under the contract. He was informed by the agent that due to the market, the price of prunes having dropped quite materially, he did not want him to furnish the remaining cars and if they were furnished they would not be received. It is appellant's contention that no such understanding was had but that even if had, the agent was without authority to release respondent from furnishing the remaining cars. No specific demand was made upon respondent to furnish the two and one-half cars under his contract. From the facts disclosed in the record we think no other reasonable conclusion could be reached than that it was much to the advantage of appellant that the remaining cars be not furnished. In view of the general powers exercised by the agent of appellant it was well within

the authority given him to release respondent from furnishing the remaining cars, and the verdict of the jury in disallowing a recovery for damages alleged to have been sustained by appellant in this respect finds, we think, support in the evidence.

The construction of the written part of the contract is somewhat involved. The terms "less brokerage of $25.00 and brokerage 10¢ per basket per car"; "Sale draft attached Bill lading" may have a definite and fixed meaning in ordinary contracts of consignment, but when incorporated in a printed form of cash purchase contract become ambiguous and uncertain and subject to explanation. It is conceded that the contract of August 12, 1927, is a form of cash contract so far as the printed matters are concerned. It was used earlier in the season by appellant in making cash contracts in the state of Washington. The contract as made was prepared and submitted by appellant, and the language of the whole thereof being ambiguous or uncertain, the rule is that the contract should be construed most strongly against the party preparing it or employing the words concerning which doubt arises. (13 C. J., p. 545, sec. 516; *Hauter v. Coeur D'Alene etc. Min. Co.*, 39 Ida. 621, 228 Pac. 259.) Another well-established principle is that, when there is a doubt as to the meaning of the words of a contract, a party will be held to that meaning which he knew the other party supposed the words to bear. (*Penn Star Min. Co. v. Lyman,* 64 Utah, 343, 231 Pac. 107, and cases cited.) The court properly left this question for the jury by instructing it "that where a written contract, upon its face, is ambiguous, oral evidence of the facts and circumstances surrounding the making of the same are admissible to explain such ambiguity in such written contract."

The general rule is that where a contract is partly written and partly printed, the written parts control the printed parts, unless the written and printed parts which are antagonistic can be reconciled. (C. S., sec. 5669.) Where there is only apparent antagonism and reconciliation is reasonable, the rule of reconciliation should govern in the

interpretation of the contract. (*Eager v. Mathewson,* 27 Nev. 220, 74 Pac. 404; *Hardie-Tynes Foundry & Machine Co. v. Glen Allen Oil Mill,* 84 Miss. 259, 36 So. 262; *Gabbert v. William Seymour Edwards Oil Co.,* 76 W. Va. 718, 86 S. E. 671.) The trouble with appellant's requested instruction on this point is that it did not contain the qualification as to possible reconciliation of the written and printed parts of the contract in question, which the jury was entitled to consider. In the light of the conflicting evidence as to whether the contract was intended to be an absolute sale or merely a consignment, the jury could have reasonably reached the conclusion that there was an absolute sale, respondent to receive $1 per basket for the prunes, appellant to deduct ten cents per basket and $25 on the total number of baskets in each carload, with the additional written clause "Sale draft attached bill lading" taken to mean the manner in which appellant intended collecting from its consignee. It does appear that a draft was drawn on the consignee with bill of lading attached thereto. The further fact that the contract provided in writing that respondent was to receive $400 as an initial payment on the purchase price of $1 per basket lends additional credence to the finding of the jury that the transaction was intended as an outright sale of the prunes to appellant. If the fruit had been disposed of by appellant at a price in advance of $1 per basket or at such price as would have netted it a profit in excess of that contemplated, the terms of the contract would not have justified respondent taking the position that he was entitled to any sum in excess of the $1 per basket stipulated by the contract to be paid him.

The price to be paid was not determined by the amount to be received by appellant. The contract provides and the evidence shows that a fixed amount was to be paid respondent per basket of prunes. It was the conclusion of the jury upon the directly conflicting evidence as to whether the transaction constituted an outright sale by respondent to appellant or a consignment only, that it was understood by respondent to be an absolute sale to appellant, payment of

$400 received and acknowledged at the time of signing the contract and balance upon delivery of the goods contracted; that when respondent delivered the prunes f. o. b. cars he put appellant in complete control and dominion thereof, retaining no authority over the shipment or disposition or to alter the price agreed to be paid him; and that the clause inserted in the contract in writing by appellant's agent was for the benefit or direction of appellant or its agents in the handling and disposition of the shipment, not repugnant to other provisions of the contract. We cannot say a fair and reasonable interpretation of all the facts and circumstances does not justify such conclusion and is not therefore supported by the evidence.

We have examined all the assignments of error made by appellant and find no error in the admission or rejection of evidence or the action of the court upon instructions given or refused. From what has been said it follows that the judgment should be affirmed, and it is so ordered; costs to respondent.

Givens, C. J., and Lee, Varian and McNaughton, JJ., concur.