471 P.2d 574

INDUSTRIAL INDEMNITY COMPANY,
a corporation, Plaintiff,

v.

COLUMBIA BASIN STEEL & IRON INC.,
a corporation, Defendant, Third-Party
Plaintiff and Cross Claimant-Respondent,

v.

Mark B. GARFF, Ryberg & Garff Construc-
tion Company, Third-Party De-
fendant-Appellant.

No. 10260.

Supreme Court of Idaho.

June 16, 1970.

---

Merrill & Merrill, Pocatello, for appel-
lant.

Hawley, Troxell, Ennis & Hawley, Boise,
for Industrial Indemnity Co., plaintiff.

Givens & Givens, Boise, for Columbia
Basin Steel & Iron Inc., respondent.

SPEAR, Justice.

This appeal arose out of an action originally initiated by Industrial Indemnity Company, an inactive party to this appeal, against Columbia Basin Steel & Iron Inc. These two companies will hereafter be referred to as "Industrial" and "Columbia" respectively. Pursuant to an agreement guaranteeing reimbursement, Industrial negotiated a settlement with an injured employee of Columbia. When Columbia refused to reimburse Industrial in full, the latter company initiated an action against it. Columbia then joined Mark B. Garff, Ryberg & Garff Construction Company, hereafter referred to as "Garff," which is the appellant herein, as a third party defendant, seeking indemnity or reimbursement on the ground that Garff's negligence was the cause of the injuries suffered by Columbia's employee. The court awarded judgment to Industrial against Columbia and presented the question of negligence to the jury. The jury found by special verdict that Garff's negligence was the sole proximate cause of the employee's injuries, and the court awarded judgment against Garff. It is from the latter verdict and judgment only that this appeal was taken.

In the spring of 1964 Garff was the general contractor for construction of a concrete silo at Lincoln, Idaho. At that time Garff entered into an oral contract with Columbia to perform the iron and steel work on the silo. Prior to this time, Garff had constructed a similar structure in the State of Washington and Columbia, as subcontractor, had done the steel and iron work on that silo. Columbia began work on the construction job at Lincoln about June 15, 1964, and on June 29th, Garff executed and forwarded to it a written "purchase order" requiring Columbia, among other things, to provide Workmen's Compensation insurance coverage and a Performance Bond. Columbia signed the purchase order contract on August 11, 1964. Early in July, Columbia made application to the State Insurance Fund, State of Idaho, for workmen's compensation which was not granted because a $300.00 deposit did not accompany the application. The deposit was not paid until after the accident involved in the suit herein, and no Workmen's Compensation Insurance coverage was acquired by Columbia until August 29, 1964.

On August 11, 1964, James C. Anderson was employed by Columbia to work on the silo. Approximately at midnight of that day, the first day of his employment, Mr. Anderson was ascending the scaffold that had been erected to go to his place of work. The workmen of Columbia in placing reinforcing steel in the silo worked from a scaffold which consisted of an open, rectangular, lattice work tower, one-half of which constituted ladders and landings enabling the men to reach their work station. The other half, which was immediately adjacent and connected thereto, constituted the shaft for the raising and lowering of a concrete bucket. The bucket was operated by Garff and was a free-fall type of operation. As Anderson was climbing the ladder of the scaffold, Columbia's foreman called to him. Anderson turned, put his head through the lattice work and looked down, at which time he was struck on the head by the descending concrete bucket.

The Industrial Accident Board was notified of the injuries of Anderson and, finding that Columbia was uninsured at the time of the accident, made demand upon Garff as general contractor to take over the compensation payments. Garff was insured for Workmen's Compensation claims by Industrial and, after some correspondence between Industrial and Columbia, the latter accepted the responsibility for the workmen's compensation payments. Columbia paid Industrial $3,000 and asked it to negotiate a settlement with Anderson for which full reimbursement would be made. Industrial settled the claim for $6,745 and presented a bill to Columbia for the balance of the amount due. When Columbia refused to pay, Industrial initiated this action alleging the foregoing facts.

Columbia answered, denying the authority of its employee to request the settlement, and also filed a third party complaint against Garff alleging a right to indemnity from Garff for all amounts paid or required to be paid to Industrial, for the reason that the injuries to Columbia's employee were the result of the negligence of Garff. After certain preliminary motions, Garff filed its answer, denying negligence, asserting that no claim was stated upon which relief could be granted and alleging contributory negligence, that the claim was barred by I.C. § 72–811, breach of contract and estoppel. The defense that the claim was barred by I.C. § 72–811 was stricken on motion by Columbia. The case was subsequently tried before a jury, the court reserving to itself the determination of the action between Industrial and Columbia, and entering judgment for Industrial. No appeal was taken from the action of the court in awarding judgment to Industrial, and thus, Garff and Columbia are the only parties to this appeal.

In the action between Garff and Columbia, the court submitted to the jury interrogatories for the rendering of a special verdict. The jury found that Anderson's injuries were caused solely by the negligence of Garff, and thus, that Columbia was not contributorily negligent. The court thereupon entered its Findings of Fact and Conclusions of Law granting judgment to Columbia against Garff in the amount of $6,745.00 together with interest and costs.

From that judgment, Garff initiated this appeal.

In its first assignment of error, Garff contends that no legal cause of action existed in favor of Columbia against it, and that the trial court erred in denying Garff's motion to dismiss, and in granting judgment to Columbia. Garff argues that I.C. § 72–102 abolished all common law rights, remedies, and cause of action between employers of an injured employee, and therefore, that the common law remedy of indemnity or reimbursement was not available to Columbia to initiate and successfully conclude this action.

In I.C. § 72–102 [1] the legislature set out the purpose for the enactment of the Workmen's Compensation laws which was to provide workmen with a rapid, guaranteed remedy for the recovery of compensation from their employer for injuries arising out of and in the course of their employment. To offset the additional burden imposed upon the employer by guaranteed compensation to an injured employee, I.C. § 72–102 abolished "all civil actions and civil causes of action for such personal injuries" *by employees against employers.* Contrary to the contentions of Garff, the statute did not abolish all common law causes of action between the actual employer (subcontractor) and the statutory employer (general contractor) of an injured workman. In 1940 the court interpreted the language of I.C. § 72–102 (codified in 1940 as I.C.A. § 43–902) in the case

1. "The common law system governing the remedy of workmen against employers for injuries received in industrial and public work is inconsistent with modern industrial conditions. The administration of the common law system in such cases has produced the result that little of the cost to the employer has reached the injured workman, and that little at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such employments formerly occasional have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage-workers.

The state of Idaho, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as is otherwise provided in this act, and to that end all civil actions and civil causes of action for such personal injuries, and all jurisdiction of the courts of the state over such causes are hereby abolished, except as is in this act provided."

of Lebak v. Nelson, 62 Idaho 96, 107 P.2d 1054, stating:

"What common law remedy only was thereby intended to be abolished? The statute answers: 'The remedy of workmen against *employers* for injuries received in industrial and public work' (italics ours). And why was the common law remedy of the worker for personal injuries against his employer abolished? Again the statute answers: Because 'the remedy of the workman has been uncertain, slow and inadequate.' The provisions of the statute are expressly confined to those occupying the relationship of employee and employer." 62 Idaho at p. 111, 107 P.2d at p. 1060.

See also O'Niel v. Madison Lumber & Mill Co., 61 Idaho 546, 105 P.2d 194 (1940), and Liberty Mutual Insurance Co. v. Adams, 91 Idaho 151, 417 P.2d 417 (1966).

In the latter case this court recognized that the common law defense of concurrent negligence was not abolished by the Workmen's Compensation law, but held it was available to an employee against his employer when the latter sought reimbursement of workmen's compensation payments from the employee who had recovered sums for his injuries from a negligent third party where the negligence of the employer, along with the negligence of the third party, concurrently contributed to the injuries of the employee. The court also denied reimbursement of the employer against the third party and quoted from Witt v. Jackson, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961) the reasoning of the North Carolina cases relied upon:

"In the Brown case, supra (Brown v. Southern Ry. Co., 204 N.C. 668, 169 S.E. 419), it was stated that 'when the employee or his estate has been satisfied, and the employer seeks to recover the amount paid by him, from such third party, his hands ought not to have the blood of the dead or injured workman upon them, when he thus invokes the impartial powers and processes of the law.' (169 S.E. at p. 420). The Lovette case,

supra, (Lovette v. Lloyd, 236 N.C. 663, 73 S.E.2d 886, 892) reiterated the same argument in more moderate language: 'It is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer.'" 17 Cal.Rptr. at 377, 366 P.2d at 649.

Garff cited the case of Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831 (1948), as authority for his contention that I.C. § 72–102 abolished all common law remedies between employers of an injured employee. An examination of *Gifford* reveals that it does not support such proposition, but on the contrary, provides authoritative support for our holding herein. In its discussion of the Workmen's Compensation Act and, more specifically, § 43–902 I.C.A. (presently I.C. § 72–102), the court in *Gifford* stated:

"It [Workmen's Compensation Act] is purely statutory and is an express departure and innovation so far as the common law is concerned, explicitly doing away with common law actions previously applicable to controversies within the scope of the statute. * * *

"However, actions of an employee, his heirs or personal representatives, against a third person to recover damages for personal injuries or death sustained by reason of actionable negligence of such third party, are not abolished by the Workmen's Compensation Law, *the provisions of the statute being expressly confined to those occupying the relationship of employee and employer.* Lebak v. Nelson, supra, at page 111, 112 of 62 Idaho [96], 107 P.2d 1054. * * *

" * * * [I]n the enactment of Secs. 43–902, I.C.A. and 43–1003, I.C.A. supra, the legislature removed from the sphere of civil actions, all suits against an employer for damages on account of personal injury or death of an employee, where such injury or death arises out of and in the course of the employment, *and this restriction applies to the employee, his personal representatives, de-*

*pendents and next of kin, which latter term includes heirs."* (emphasis added) 68 Idaho at p. 334, 193 P.2d at p. 833.

■ Garff next contends that the trial court erred in striking from its Answer the Fourth Affirmative Defense which asserted the provisions of I.C. § 72–811.[2] Garff argues that even if the injury to Anderson was caused by its negligence, I.C. § 72–811 grants Garff the right of retribution against Columbia for any compensation paid by Garff to an employee of Columbia. Further, Garff maintains that although it has not actually paid the compensation, to prevent a circuity of action, the statute constituted a valid defense and should not have been stricken by the trial court.

The primary purpose of I.C. § 72–811 is to assure and guarantee an injured employee the benefits receivable under the Workmen's Compensation Act in the event that his actual employer has not complied with I.C. § 72–801 requiring him to acquire Workmen's Compensation Insurance for the protection of his employees. In the event of such non-compliance, the duty to provide benefits falls upon the statutory employer. It has been established that under I.C. § 72–1010 the general contractor is the statutory employer of a subcontractor's employees. Gifford v. Nottingham, supra. To prevent the inequity resulting from the actual employer's failure to comply with I.C. § 72–801, I.C. § 72–811 provides that "(t)he employer who shall become liable for and pay such compensation may recover the same from the contractor or subcontractor for whom the employee was working at the time of the accident." However, Sec. 72–811 does not provide for the situation existing in the present case wherein the negligence of the statutory employer was the sole, proximate cause of the injuries suffered by the employee. There is nothing in Sec. 72–811, nor in the entire Act, which deprives the actual employer from obtaining indemnity or reimbursement from the negligent statutory employer to the extent of the compensation for which the actual employer is liable under the Workmen's Compensation Act.

■■ It is beyond dispute that the common law, so far as it is not repugnant to nor inconsistent with the Constitution or laws of the United States, is the rule of decision in the courts of Idaho in all cases not provided for by statutory law. I.C. § 73–116; State v. Iverson, 79 Idaho 25, 310 P.2d 803 (1957); State ex rel. Rich v. Idaho Power Company, 81 Idaho 487, 346 P.2d 596 (1959); Our Lady of Lourdes v. Vanator, 91 Idaho 407, 422 P.2d 74 (1967). It has also been established that changes in the common law by the adoption of a statute may not be presumed, nor may such changes be accomplished by legislation of doubtful implication. Sprouse v. Magee, 46 Idaho 622, 269 P. 993 (1928); Moon v. Bullock, 65 Idaho 594, 151 P.2d 765 (1944).

■ It is well established that under the common law, a person who without fault on his part is compelled to pay damages occasioned by the negligence of another is entitled to indemnity. State Insurance Fund v. Taron, 333 P.2d 508 (Okl.1958); Southern Coal and Coke Co. v. Beech Grove Mining Co., 53 Tenn.App. 108, 381 S.W.2d 299 (1964); First National Bank of Arizona v. Otis Elevator Co., 2 Ariz. App. 596, 411 P.2d 34 (Ariz.1966), citing 42 C.J.S. Indemnity § 20 pp. 594, 595, and 27 Am.Jur., Indemnity § 16, p. 464. The

---

2. "An employer subject to the provisions of this act, shall be liable for compensation to an employee of a contractor or subcontractor under him or who has not complied with the provisions of section 72–801 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or subcontractor shall also be liable for such compensa-tion, but the employee shall not recover compensation for the same injury from more than one party. The employer who shall become liable for and pay such compensation may recover the same from the contractor or subcontractor for whom the employee was working at the time of the accident. This section shall be in force as to all contracts made subsequent to March 15, 1921."

right to indemnity between employers in workmen's compensation is premised upon a theory similar to that which supports third party actions. In his noted work on workmen's compensation statutes, Larson explains that basic theory as follows:

"The concept underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer. As mentioned at the close of the preceding chapter, every mature loss-adjusting mechanism must look in two directions: it must make the injured person whole, and it must also seek out the true wrongdoer whenever possible. While compensation law, in its social legislation aspect, is almost entirely preoccupied with the former function, it is not so devoid of moral content as to overlook the latter. It should never be forgotten that the distortions of our old-fashioned fault concepts that have been thought advisable for reasons of social policy are exclusively limited to providing an assured recovery for the injured person; they have never gone on—once the injured person was made whole—to change the rules on how the ultimate burden was borne. Thus, in the realm of master's vicarious liability for the torts of his servant, the doctrine of respondeat superior ignored the moral innocence of the employer long enough to see to it that the injured third person had a defendant to sue who could pay a judgment; but, having done this, the doctrine did not imply any immunity on the part of the wrongdoing servant himself. The master always has the legal right to sue his own servant for reimbursement of the amount the master had to pay the third person because of the wrongdoing of the servant.

"Similarly, in compensation law, social policy has dispensed with fault concepts to the extent necessary to ensure an automatic recovery by the injured workman; but the disregard of fault goes no further than to accomplish that object, and, with payment of the workman

assured, the quest of the law for the actual wrongdoer may proceed in the usual way." Larson's Workmen's Compensation Law, Vol. 2, ch. 14, § 71.10, pp. 165–66.

The propriety of allowing indemnification between employers (general contractor and subcontractor) in workmen's compensation as a method of placing the burden upon the wrongdoer was specifically determined by the Court of Appeals of Kentucky in the case of Ruby Lumber Co. v. K. V. Johnson Co., 299 Ky. 811, 187 S.W.2d 449 (1945). The facts in that case were very similar to the case before the bar and the pertinent Kentucky Workmen's Compensation statutes were substantially the same as the Idaho statutes. The court, in holding that the subcontractor had a right to sue the principal contractor for indemnification on the theory that the latter's negligence caused the injury to the subcontractor's employee, stated:

"As we read the involved sections, and the entire act, we find nothing which can be construed to deprive the subcontractor of the right to recoup at common law, limited damages as is well settled, to the extent of compensation for which the subcontractor is liable by reason of the statute. While we are under the duty of giving a liberal construction to the Act for the benefit of employees, we are not called upon to give the Act such a strained construction as would relieve an admitted tort-feasor of liability for injury, or to saddle upon an innocent party the financial loss, which by the construction of the Act he is required to bear primarily." 187 S.W.2d at pp. 452–453.

The Kentucky court affirmed and reemphasized its decision in the same case upon appeal after trial in Johnson v. Ruby Lumber Company, 278 S.W.2d 71 (Ky. 1955). Ten years later, the Kentucky court again reviewed its holding in *Ruby* and followed that decision in Whittenberg Engineering & Construction Co. v. Liberty Mutual Insurance Co., 390 S.W.2d 877 (Ky. 1965).

In Whittenberg it was contended that a Workmen's Compensation statute "sweeps away" the common law rights of the subcontractor and its insurance carrier to recover indemnity from the general contractor for negligent injury to the subcontractor's employees. The court commented that:

"The view that a workmen's compensation statute 'sweeps away' all civil action arising out of injuries compensable under workmen's compensation acts is described as the minority view and is seriously questioned as valid by respectable authority. See 2 Larson, Workmen's Compensation Law, § 72.64, p. 192."

and then concluded that the view taken in the Ruby cases was sound.

With this reasoning we concur and the trial court did not err in holding the common law cause of action of indemnity or reimbursement available to Columbia.

We conclude that the trial court did not err in striking from Garff's Answer the Fourth Affirmative Defense which asserted the provisions of I.C. § 72–811 since that statute did not abrogate Columbia's common law right to indemnity from the negligent general contractor.

Conceding Garff would ordinarily be entitled to assert § 72–811 as a valid defense to an action brought by its subcontractor to collect for benefits paid to an injured employee of the subcontractor, to prevent a circuity of actions after any payment by Garff (general contractor-statutory employer), Garff's negligence, which was the sole proximate cause of the employee's injuries, precludes the use of the statute as a defense to the common law cause of action grounded primarily on such negligence. Thus the ultimate loss from the wrongdoing falls upon the wrongdoer.

■ Although the trial court's Findings and Conclusions were based on different reasoning (i. e., waiver by Garff by permitting Columbia to proceed without first obtaining workmen's compensation insurance), no error was committed since the

court's order was correct. Where the final judgment or order of a lower tribunal is correct, but entered upon an erroneous theory, the judgment or order will be affirmed by the appellate court upon the correct theory. Evans v. Continental Life and Accident Company, 88 Idaho 254, 398 P.2d 646 (1965); Jackson v. Blue Flame Gas Company, 90 Idaho 393, 412 P.2d 418 (1966); Openshaw v. Adams, 92 Idaho 488, 445 P.2d 663 (1968).

In his third specification of error, Garff contends that the lower court erred in its Finding of Fact No. 10 on the ground that there was no competent evidence produced to support such a finding and the same is contrary to law. Finding of Fact No. 10 stated that by allowing Columbia to enter into performance of the construction contract, Garff waived any right to assert the obtaining of workmen's compensation insurance and the affirmative defense of estoppel based on such right.

We have held in this case that Columbia may recover indemnification from Garff for the compensation payments the former paid to the injured employee, Anderson, because Garff's negligence was found to be the sole proximate cause of Anderson's injuries. It necessarily follows that if Columbia had carried workmen's compensation insurance, Columbia's insurer would have been initially liable for Anderson's compensation benefits and, having paid them, could subsequently recover indemnification from Garff just as Columbia did. Since Garff would have been liable for indemnification in either event, Columbia's failure to obtain workmen's compensation insurance constituted no defense for Garff and the defense of estoppel based thereon was nonexistent also. In view of this holding, the trial court's finding therefore constituted harmless error at most.

■ Fourthly, Garff contends the trial court erred in refusing to grant its motion to amend the third defense in its Answer to conform to the evidence produced in court. If the motion had been granted, the third defense as amended would have alleged that

726

Anderson was negligent in failing to observe the existing conditions, and that such negligence, or the concurring negligence of Anderson and Columbia, operated as a bar to the recovery sought.

The jury was presented with a special verdict form containing three questions, two of which contained two separate parts. The questions and the jury's answers were as follows:

"QUESTION NO. 1: Who, if any, of the parties involved in the accident or in this lawsuit was or were negligent?

"MARK B. GARFF, RYBERG & GARFF CONSTRUCTION CO.   (GARFF)

"QUESTION NO. 2 (a):  Was the negligence of any one person the sole proximate cause of the Accident?  YES

　　　　　　　　2 (b):  If your answer to that question was yes name the person.  GARFF

"QUESTION NO. 3 (a):  Did negligence on the part of two or more persons concur as the proximate cause of the accident?
"NO.

　　　　　　　　3 (b):  If your answer to that question is yes name the persons who's [sic] negligence so concurred ＿＿＿＿＿＿ ."

————◆————

The effect of Garff's motion to amend its third defense, if it had been granted by the court, would have been to present to the jury the question of whether Anderson or Columbia was negligent in any respect and, if so, whether such negligence was the proximate cause of the accident which injured Anderson.  Since these questions were effectively presented to the jury through the use of the special verdict, the trial court's denial of Garff's motion to amend did not prejudice Garff's case and thus, such denial constituted, at most, only harmless error.

■ Garff's next contention is that the trial court erred in refusing to direct a verdict in its favor at the close of the evidence presented by Columbia.  A motion for a directed verdict admits the truth of the adverse evidence and every inference of fact which may be legitimately drawn therefrom.  Loomis v. Hannah, 89 Idaho 358, 404 P.2d 568 (1965); Fawcett v. Irby, 92 Idaho 48, 436 P.2d 714 (1968).  Questions of negligence and contributory negligence are generally questions of fact to be resolved by the jury, and only when the facts are undisputed and where but one reasonable conclusion can be drawn therefrom does such

negligence become a question of law.  Foster v. Thomas, 85 Idaho 565, 382 P.2d 792 (1963); Deshazer v. Thompkins, 89 Idaho 347, 404 P.2d 604 (1965); Kelley v. Bruch, 91 Idaho 50, 415 P.2d 693 (1966).  In this case the facts were conflicting and were certainly not so clear as to make the questions of negligence and contributory negligence mere questions of law.  This is especially true in light of the jury's verdict finding that the *sole* negligence of Garff was the proximate cause of the accident.  Thus, no error was committed by the court in denying Garff's motion for directed verdict.

Garff next assigns as error the action of the trial court in granting a judgment showing the improper amount of costs.  Since the Memorandum of Costs was subsequently amended to show the proper amount of costs, Garff was not prejudiced by the initial incorrect showing of costs, but the judgment should be amended to allow only the proper amount of costs.

Appellant Garff's remaining assignments of error are based on the contention that the evidence did not support the jury's verdict that the negligence of Garff was the sole proximate cause of the injuries to

 

Anderson. A review of the record discloses, substantial and competent, though conflicting evidence in support of the verdict and judgment and, in such case, we have repeatedly held that the same shall not be set aside. I.C. § 13–219; Big Butte Ranch, Inc. v. Grasmick, 91 Idaho 6, 415 P.2d 48 (1966); Byington v. Clover Club Potato & Produce Company, 91 Idaho 165, 418 P.2d 206 (1966); Commercial Credit Equipment Corp. v. Knowlton, 86 Idaho 314, 386 P.2d 370 (1963); Anderson v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 494, 365 P.2d 965 (1961).

Judgment for respondent, Columbia, is affirmed. Costs to respondent.

McFADDEN, C. J., McQUADE and SHEPARD, JJ., and WARD, District Judge, concur.